MATTER OF GENERAL ATOMIC COMPANY

In Visa Petition Proceedings

SND-N-1730

*Decided by Commissioner August 21, 1980*

(1) A person who is qualified as a member of the professions qualifies as a person "of distinguished merit and ability" as that term is used in section 101(a)(15)(H)(i) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(H)(i).

(2) Where a beneficiary is a member of the profession of civil engineering, the services are to be performed for a temporary period of time, and the job offered requires the services of a professional engineer, whether or not the beneficiary is preeminent or renown in engineering is not in question. *See Matter of Essex Cryogenics Industries, Inc.*, 14 I&N Dec. 196 (D.A.C. 1972).

ON BEHALF OF PETITIONER:   Ronna Lee Beck, Esquire
Rogovin, Stern & Hugh
1730 Rhode Island Avenue, N.W.
Washington, D.C. 20036

The instant petition is on certification at my direction for review of the Regional Commissioner's decision. The District Director denied the petition and certified his decision to the Regional Commissioner. The Regional Commissioner, in agreement with the decision of the District Director, concluded that the attainment of an undergraduate degree in and of itself does not automatically establish an alien to be a person of distinguished merit and ability. The Regional Commissioner concluded further that *Matter of Essex Cryogenics, Industries, Inc.*, 14 I&N Dec. 196 (D.A.C. 1972), found that an alien professional is qualified as an "H-1" only if the alien is distinguished or preeminent in his profession.

The petitioner is offering the beneficiary employment as a civil engineer specifically involved in stress analysis. The beneficiary has obtained a Bachelor of Science degree in civil engineering from a United States university and has completed 12 months of practical training in the employ of the petitioner. During her training with the petitioner the beneficiary is stated to have acquired specialized knowledge uncommon to her profession. This knowledge is said to be pos-

sessed by only twenty-five to thirty people within the United States. The Regional Commissioner questioned her acquisition of this knowledge as it is not offered in United States' learning institutions and allegedly was so quickly acquired through her on-the-job experience.

*Matter of Essex Cryogenics Industries, Inc.*, 14 I&N Dec. 196 (D.A.C. 1972), states:

> The Service has long held that a person who is qualified as a member of the professions qualifies as a person "of distinguished merit and ability" as that term is used in section 101(a)(15)(H)(i), *supra,* [sic]. If additionally, he is to temporarily perform specified services which require his professional abilities, he is qualified for "H-1" classification.

The requirements contained in *Essex, supra,* do not include the possession of an advanced degree or renown in the profession.

Section 101(a)(32) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(32), states that "[t]he term "profession" shall include but not be limited to architects, [and] engineers ..." This definition, combined with the holding in *Essex,* lead to the obvious conclusion that where an alien will perform professional services as an engineer and is qualified to be an engineer that alien is within the meaning of "distinguished merit and ability."

The attainment of an undergraduate degree is a material requisite to qualifying only where such degree is a minimum and realistic prerequisite for entry into a profession. *Matter of Shin,* 11 I&N Dec. 686 (D.D. 1966).

The instant beneficiary is a member of the profession of civil engineering. Her services are to be performed for a temporary period of time. The job offered requires the services of a professional engineer. Whether or not the beneficiary is preeminent or renown in engineering is not in question. Accordingly, the following order will be entered.

ORDER: The Regional Commissioner's decision of June 20, 1980, be withdrawn.

**FURTHER ORDER:** The petition be approved.