MATTER OF ORD

In Visa Petition Proceedings

DEN-N-5568

*Decided by Regional Commissioner May 4, 1982*

(1) A person who is qualified as a member of the professions also qualifies as a person of "distinguished merit and ability." *Matter of General Atomic Company*, 17 I&N Dec. 532 (Comm. 1980), followed.

(2) An alien employed by a firm marketing the temporary services of professionals (i.e., a "job shop") may qualify as a temporary worker under 101(a)(15)(H)(i) even though the firm has a permanent need for professionals having the alien's qualifications, if the petitioning firm can demonstrate its intention to employ the alien for only a temporary period.

ON BEHALF OF APPLICANT: Pro se

This matter is before the Regional Commissioner who reopened it for the purpose of entering a revised decision for clarification only. The previous decision to sustain the appeal remains unchanged. The District Director had denied the petition on March 25, 1981, and the appeal was sustained by the Regional Commissioner on September 29, 1981.

The petitioner is a large employment agency with an office in Seattle, Washington, which provides engineering technical support and personnel to aerospace and other industries. It employs 1,200 people, has a gross annual income of 35 million dollars, and is a subsidiary of the even larger Los Angeles based personnel provider firm, Transworld Service, Inc. The beneficiary is a 25-year-old native and citizen of the United Kingdom. He was awarded a Bachelor of Arts degree in Engineering at Trinity Hall of the University of Cambridge. This degree was determined by a recognized foreign credentials evaluation service in New York to be equivalent to a Bachelor of Science degree awarded by an American college or university.

The petitioner seeks the services of the beneficiary as an aeronautical engineer in order to satisfy its contractual commitments with Martin Marietta Aerospace of Colorado and other aerospace companies to provide qualified engineering personnel on a temporary, but continuing basis. The petitioner is a temporary engineering services company known as a "job shop" under contract with a client, such as Martin Marietta, to

fill engineering vacancies. The beneficiary, a "job shopper", will be under contract with the petitioner and will be paid a salary of $720 per week ($18 per hour transportation expenses, and per diem by the petitioner rather than by Martin Marietta where he will be employed). The beneficiary's contract with the petitioner is for a one-year period. The petitioner indicates that it may place the beneficiary with another of its "clients" after the project at Martin Marietta is completed. It is clear by the terms and conditions of the beneficiary's employment contract that he is actually an employee of the petitioning firm notwithstanding that his services are to be rendered for a firm which contracts with the petitioner for them. (*Matter of Smith*, 12 I&N Dec. 772 (D.D. 1968)). The petitioner in this instance is not an employment agency which only acts as broker in arranging employment between an employer and a job seeker. An employment placement agency acting as a broker does not qualify as the employer of the job seeker.

The nonimmigrant classification sought by the petitioner to enable the beneficiary to work in the United States is that found at § 101(a)(15)(H)(i) of the Act, 8 U.S.C. 1101(a)(15)(H)(i). This H-1 classification requires that the beneficiary have a residence in a foreign country which he has no intention of abandoning; be a person of distinguished merit and ability in the engineering field; and be coming to perform services of an exceptional nature requiring such merit and ability for a temporary time. In *Matter of General Atomic Company*, 17 I&N Dec. 532 (Comm. 1980), it was held that a person who is qualified as a member of the professions also qualifies as a person of "distinguished merit and ability." There it was found that civil engineering was a professional occupation. In the case before me, because the beneficiary has earned at least a Bachelor of Science degree in the field, he is qualified as a "professional engineer" and is to be considered a worker of distinguished merit and ability, following *General Atomic*. See also, *Matter of Asuncion*, 11 I&N Dec. 660 (R.C. 1966).

If the services to be performed by the beneficiary require his professional abilities, then they are the requisite "exceptional services" *Matter of Essex Cryogenics Industries, Inc.*, 14 I&N Dec. 196 (D.A.C. 1972). The record has been examined and it is concluded that the duties for which the petitioner needs the beneficiary to satisfy its contract with Martin Marietta require the beneficiary's abilities as an aeronautical engineer.

There is concern here that the position offered by the petitioner may not be a suitable one by which to classify the beneficiary as a nonimmigrant worker of distinguished merit and ability because the petitioner's intention with respect to the beneficiary is for indefinite, not temporary employment. There is concern because it is the petitioner's business to supply qualified engineers to a large number of aerospace companies for

projects on a continuing basis. Thus, the petitioner appears to need a permanent pool of qualified engineers from which to draw. Although each project may be of limited duration thus providing only temporary employment to a given beneficiary, the petitioner may have recruited this beneficiary not for one project, but to join its pool of engineers for an indefinite period. The petitioner, whose business is exclusively as a *supplier* of temporary engineering personnel, has a permanent need for persons such as the beneficiary in order to fulfill its contracts. This was also the concern of the District Director. He concluded that the petitioner had failed to establish that it seeks the services of the beneficiary on only a temporary basis. This is a relevant inquiry following Operations Instructions of this Service at O.I. 214.1(h)(1), and *Matter of University of Oklahoma*, 14 I&N Dec. 213 (R.C. 1972). The petitioner's "need" for a permanent employee is not relevant to the H-1 classification but nonetheless the employer is required to demonstrate that it is his intention to employ the specific beneficiary being petitioned for, for only a temporary period. By this requirement, the District Director is not re-imposing the requirement deleted by Pub. L. 91-225 (Apr. 7, 1970) 84 Stat. 116, that services be of a temporary nature, or that the beneficiary's intention with regard to permanent or temporary employment is material to the visa petition proceedings. The intention of the beneficiary is germane to visa issuance or proceedings under § 248 of the Act, 8 U.S.C. 1258, for change of nonimmigrant classification.

In August 1981, the Vice President and General Manager of the petitioning firm's main offices in Los Angeles was heard in oral argument. He said that LPL Technical Services has several offices throughout the United States (Los Angeles; Lakewood, Colorado; Seattle; Santa Ana, California; Houston; St. Louis; and Great Neck, New York) and the world (London, Tel Aviv) and that only office staff at these locations are considered to be "permanent employees." He stated that since January 1979, his firm has placed nearly 3,100 engineering employees for an average period of employment of less than seven months, and that less than ten per cent of these employees are nonimmigrant aliens. The firm has over 30,000 engineers and engineering technicians "on the rolls" in computerized resume files and that less than 500 (just one or two per cent) are nonimmigrant aliens. The firm requires a constant pool of engineers available for temporary assignments but indicated that United States resident engineers make up this pool, not alien engineers.

The Vice President of the petitioning firm also stated that he is fully aware of the restrictions and requirements for employment of an alien classified as a nonimmigrant temporary worker. The firm conducts interviews abroad with only temporary employment in mind and fully discusses this limitation with each alien applicant. The alien engineers are hired to fill a specific existing contract with a client and the beneficiaries

-enter the United States with a full understanding that their employment is to be for a temporary period, not to exceed a few years at the most. The firm has a similar understanding and does not consider the foreign engineers in the same light as its pool of domestic job-shopper engineers.

The Vice President of the petitioning firm has affirmed that it is the intention of his firm to comply with every aspect of Service regulations relating to nonimmigrant temporary workers. He has also pointed out that the Department of Labor had determined that in almost every part of the United States there was a shortage of qualified engineers for the aerospace industry. He advised that the system of having a provider "job shop" firm recruit and hire engineers for specified projects was the prevailing method of filling personnel requirements in the aerospace industry.

In view of these representations made on appeal, it is concluded that the petitioner has established that his intention with regard to this beneficiary is for temporary employment and that the other requirements for H-1 classification have been met. The visa petition should be approved.

ORDER: The appeal is sustained and the petition is approved.