**VOLT TECHNICAL SERVICES CORP., a Division of VOLT INFORMATION SCIENCES INC., Plaintiff,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

**No. 85 CIV. 8490.**

United States District Court, S.D. New York.

Aug. 1, 1986.

Cohen & Tucker, New York City, for plaintiff; Mark S. Merado, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Jorge Guttlein, Sp. Asst. U.S. Atty., of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Volt Technical Services Corp., a division of Volt Information Sciences, Inc. ("Volt") is a New York corporation which provides highly skilled personnel to the nuclear industry. On or about May 16, 1985, Volt began applying for visas, pursuant to § 101(a)(15)(H)(ii) of the Immigration and Nationality Act of 1952 (the "INA"), 8 U.S.C. § 1101(a)(15)(H)(ii), for thirty alien beneficiaries ("beneficiaries"), in order that they could perform services as nuclear start-up technicians at nuclear power plants throughout the United States.

On July 25, 1985, these petitions for nonimmigrant temporary workers' visas ("H-2 visas") were denied by defendant Immigration and Naturalization Service (the "INS") which indicated that the petitioner's need for the services of nuclear start-up technicians is "permanent rather than temporary." (Complaint, Exhibit 3). Plaintiff appealed that decision to the defendant's administrative appeal unit. On September 26, 1985, the denial was affirmed. (Complaint, Exhibit 5). Plaintiff has commenced this action as an appeal from that adverse decision pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, claiming that the INS decision denying its petitions was arbitrary and capricious. Presently before the court are the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c), F.R. Civ.P.

The INA provides mechanisms covering several nonimmigrant categories whereby employers seeking to employ temporarily a certain alien in the United States may do so without respect to the numerical limitations placed on the overall admission of workers. Section 101(a)(15)(H)(ii) is one of the mechanisms. That section, in pertinent part, confers nonimmigrant status on the following relevant class of aliens:

(H) an alien having a residence in a foreign country which he has no intention of abandoning ... (ii) *who is coming temporarily to the United States to perform temporary services or labor,* if unemployed persons capable of performing such service or labor cannot be found in this country....

(emphasis added) 8 U.S.C. § 1101(a)(15)(H)(ii).

The test for whether a job is temporary as opposed to permanent is "the nature of the *need* for the duties to be performed," *Matter of Artee Corp.,* 18 I & N Dec. 366 (Comm.1982) (emphasis added). This is a more flexible standard than previously applied under *Matter of Contopouslous,* 10 I & N Dec. 654 (1964), where the INS, in interpreting § 101(a)(15)(H)(ii), originally focused on the nature of the position, and its permanence, rather than on the duration of the employer/petitioner's need.

In *Artee,* the INS was faced with a factual situation strikingly similar to that involved here. The petitioner for H-2 visas in that case provided temporary help to technically-oriented firms which had fluctuating needs for machinists. In denying the petition for H-2 visas, the INS examined the temporary help service's need for machinists, not its customers' need for machinists. In doing so, the INS determined that while "the customers of the petitioner

do not have a steady need for a specific number of employees ... the situation of a temporary help service differs...." *Artee, supra,* at 367. The INS found that "[t]he business of a temporary help service is to meet the temporary needs of its clients. To do this they must have a *permanent cadre of employees available to refer to their customers* for the jobs for which there is frequently or generally a demand." *Id.* (emphasis added). The key question the INS asked—and answered in the negative—was: "Can Artee establish that they have not employed machinists in the past and will not need the services of machinists in the near, definable future?" *Id.* The INS explained that a temporary help service could offer employment of a temporary nature only if the job at issue "requir[ed] skill for which the company has a non-recurring demand or infrequent demand." *Id.* at 368.

Volt admits that the INS's new interpretation of § 101(a)(15)(H)(ii)—focusing on the petitioner's need rather than the nature of the duties to be performed—is more generous than the old interpretation, and "may be a correct one." (Plaintiff's Memorandum of Law in Opposition to Defendant's Cross-Motion for Judgment on the Pleadings at 8). However, Volt argues that applying the new standard of temporariness enunciated in *Artee* to temporary help services "is contrary to the legislative intent of the temporary worker statute", *Id.,* since "the greater the shortage for temporary help in a given field may be, the temporary help service will be prohibited from alleviating that shortage. But where there is little or infrequent demand in a particular field the INS will sanction the temporary help service bringing in workers to address that infrequent need." *Id.* at 7. Furthermore, plaintiff argues that even if *Artee* is an accurate statement of the law regarding temporary alien workers and temporary help services hiring such workers, given the nature of the nuclear energy industry the new standard of temporariness was improperly applied in this case. The court disagrees with both of these arguments.

First, addressing the INS's interpretation of the H–2 visa provision of the INA, as enunciated in *Artee,* such agency interpretation is entitled to great deference if it is "consistent with the statutory language, legislative history, and purpose of the statute." *De Los Santos v. I.N.S.,* 690 F.2d 56, 59 (2d Cir.1982). In the context of § 101(a)(15)(H)(ii), the INS now interprets proposed employment as temporary only where it is clearly shown that the petitioner's need for the beneficiary's services or labor is of a short, identified length, limited by an identified event located in time. As specifically indicated in *Artee,* where the visa petitioner is a temporary help service, the relevant employment relationship is that between the temporary help service and the beneficiary of the H–2 visa, not the employment relationship between the beneficiary and the temporary help service's clients who hire the beneficiary from the labor agency for a single task or assignment. To focus on the latter relationship would lead to the nonsensical conclusion that all positions in construction, and in various other industries, are temporary merely because a single task or assignment is temporary. Such a conclusion is inconsistent with the important distinction made under the INA between nonimmigrants seeking to obtain H–2 visas and aliens seeking to immigrate to the United States who must, unless they are exempt, obtain an immigrant visa under the rigorous preference scheme set forth by Congress in § 203 of the Act, 8 U.S.C. § 1153.

The relevant sections of this preference scheme are as follows:

(3) Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 201(a), to qualified immigrants who are members of the professions, or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States, and whose services in the professions, sciences, or arts are sought by an employer in the United States.

(6) Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 201(a), to qualified immigrants who are capable of performing specified skilled or unskilled labor, *not of temporary or seasonal nature*, for which a shortage of employable and willing persons exists in the United States.

(emphasis supplied). 8 U.S.C. §§ 1153(a)(3), (6).

■ Because the third and sixth preference categories under § 203 of the INA cover immigrants who perform labor *not of a temporary or seasonal nature* and limit the number of visas available to such qualified immigrants, it is easier and preferable for laborers, such as the instant beneficiaries, to attempt to gain entry into the United States through a nonimmigrant H–2 visa. The INS's present interpretation of § 101(a)(15)(H)(ii) prevents the likelihood of so-called "temporary" workers from entering this country permanently under the less rigorous standard of § 101(a)(15)(H)(ii), rather than applying properly as immigrants under the more stringent preference classification available under §§ 203(a)(3), (6) and 204, 8 U.S.C. §§ 1153(a)(3), 1153(a)(6) and 1154. The court finds that the INS's application of its new interpretation of "temporary labor or services" to temporary help services is not inconsistent with this concern that American labor should be protected by limiting the length of stay of nonimmigrant alien laborers.

■ Plaintiff's next argument that the need for nuclear power plant start-up technicians will "in the near future, be at an end in this country," and thus under the *Artee* temporariness standard petitioner's need for such employees is "finite and, therefore, temporary in nature" is also un-persuasive. (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings at 6). Tracking the language of the primary question put forth in *Artee*, the question this court must ask is: "Can Volt establish that it has not employed nuclear start-up technicians in the past and will not need the services of such technicians in the near, definable future?" Since 1981, plaintiff has been receiving labor certifications from the Bureau of Employment Security, pursuant to 20 C.F.R. Part 621, stating that qualified workers are not available within the United States for referral to the employer by the Employment Service to perform temporary services as a nuclear start-up technician at nuclear power plants in the United States.[1] (Complaint ¶ 5). Plaintiff also admits that the INS has approved its petitions to classify various aliens as temporary nuclear start-up technicians since 1981. (Complaint ¶ 7). These facts indicate that plaintiff has had a recurring need for nuclear start-up technicians in the past. Plaintiff's reference to a *Forbes* magazine article opining that once all existing nuclear power plants are on line no other nuclear power plant will be built, as nuclear power is uncompetitive with oil or coal, does not clearly establish that Volt's need for nuclear start-up technicians will end in the "near, definable future" as required by § 101(a)(15)(H)(ii).

■ A temporary help service may be able to meet the requirements for employment of nonimmigrant temporary workers if it indicates that it hired alien workers to fill a specific existing contract with a client and the beneficiaries entered the United States with the understanding that their employment was to be for a temporary period. In *Matter of Ord*, 18 I & N Dec. 285 (Reg.Comm.1982), the temporary help firm required a constant pool of engineers

---

**1.** The regulations of the Department of Labor ("DOL") establish criteria and procedures for obtaining labor certifications for H–2 non-immigrants. *See* 8 C.F.R. § 214(3)(A). In contrast to § 2112(a)(14) of the INA which preconditions the grant of a third or sixth preference immigrant visa classification upon the receipt of a labor certification from DOL, the labor certification issued for an H–2 nonimmigrant is merely advisory, since the INA vests complete authority in the Attorney General or his delegate INS to make the ultimate determinations with respect to the issuance of H–2 visas. 8 U.S.C. § 1101(a)(15)(H).

582

to be available for temporary assignments, but indicated that United States resident engineers made up this pool—not the alien engineers who were hired to fill specific existing contracts. Moreover, in *Wilson v. Smith,* 587 F.Supp. 470 (D.D.C.1984), the court held an INS denial of a petition by parents to have an alien classified as a nonimmigrant temporary worker to care for their child during her toddlerhood to be arbitrary, capricious and an abuse of discretion where the parents established that their need for a live-in employee during their daughter's youth "will end in the near, definable future". *Id.* at 473.

In the absence of evidence that Volt has a non-recurring or infrequent demand for nuclear start-up technicians, the court is unable to hold that the INS's denial of plaintiff's petition was arbitrary, capricious and an abuse of discretion. The INS's interpretation of § 101(a)(15)(H)(ii) is correct, and was correctly applied in this present case. Thus, the INS's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

IT IS SO ORDERED.