# Temporary Workers Under § 301 of the Immigration Reform and Control Act

"Temporary" work under § 301 of the Immigration Reform and Control Act of 1986, which permits aliens to enter the United States temporarily to perform "temporary" services or labor, refers to any job where the employer's need for the employee is temporary. The nature of the underlying job and, in particular, whether the underlying job itself can be described as permanent or temporary, is irrelevant.

April 23, 1987

MEMORANDUM OPINION FOR THE COMMISSIONER,
IMMIGRATION AND NATURALIZATION SERVICE

This responds to your request for our opinion on what constitutes "temporary" work under § 301 of the Immigration Reform and Control Act of 1986 (Act), to be codified as 8 U.S.C. § 1101(a)(15)(H)(ii). We believe that temporary work refers to any job where the employer's need for the employee is temporary, regardless of whether the underlying job can be described as permanent or temporary. Because this conclusion differs in part from the analysis proposed both by the Immigration·and Naturalization Service (INS) and the Department of Labor, we set forth our analysis below in some detail.

The Immigration and Nationality Act has for many years included a provision permitting aliens to come "temporarily to the United States to perform temporary services or labor." 8 U.S.C. § 1101(a)(15)(H)(ii) (1982). These aliens are known as "H2" workers. The 1986 Act amended § 1101(a)(15)(H)(ii) to add a new section specifically covering agricultural workers. The statute now covers:

> (H) an alien having a residence in a foreign country which he has no intention of abandoning . . . (ii) who is coming temporarily to the United States (a) *to perform agricultural labor or services . . . of a temporary or seasonal nature*, or (b) to perform other temporary service or labor.

*Id.* (emphasis added).[1] Agricultural workers who receive visas under this new section are referred to as H2A workers.

---

[1] Agricultural labor will be defined by the Secretary of Labor and will include all the forms of agriculture listed in the Internal Revenue Code, 26 U.S.C § 3121(g), and the Fair Labor Standards Act, 29 U.S C. § 203(f).

The INS and the Department of Labor have each drafted regulations implementing this provision. The INS regulation would permit an alien to obtain an H2A visa for any job in the United States for a period of up to three years, after which the alien would have to depart for six months.[2] Thus, INS would simply define a "temporary" job as any job for up to three years. The Department of Labor, in contrast, takes a somewhat stricter view by defining temporary to exclude any permanent job which an employer needs to fill on a temporary basis. Proposed Department of Labor regulation, *Supplementary Information*, at 7. Under the Labor Department's proposed regulation, "A year-round or otherwise long-term job does not qualify as temporary." *Id.*

In order to resolve the issue of how to define "temporary" work, we examined several sources: the statutory language, the legislative history, the dictionary definition of "temporary," and the case law. On the basis of our review, we have concluded that temporary work under § 1101(a)(15)(H)(ii)(a) includes any agricultural work where the employer needs a worker for, as a general rule, a year or less.

We begin our analysis with the language of the statute. As noted above, the new language permits aliens to enter this country "temporarily" in order to perform agricultural work "of a temporary or seasonal nature." 8 U.S.C. § 1101(a)(15)(H)(ii)(a). The plain language of the statute thus requires that the alien's stay must be temporary and that the work must be of a temporary nature.

As a starting point, we believe that "temporary" means something other than seasonal. Although seasonal work refers to tasks that are tied to one of the four seasons, such as spring planting or fall harvesting, temporary work is not that strictly limited. Moreover, it is clear, especially given the specific incorporation into the new section of the broad definitions of agriculture from the Tax Code and the Fair Labor Standards Act, that every kind of agricultural work is covered.[3] *See* H.R. Rep. No. 99–682, 99th Cong., 2d Sess. 80 (1986). The kind of agricultural work listed in these statutes is extremely broad, covering, for example, "all service performed . . . in connection with raising or harvesting any agricultural or horticultural commodity," including "management of livestock." 26 U.S.C. § 3121(g). Neither the Tax Code nor the Fair Labor Standards Act definitions distinguish between agricultural jobs of a transient nature, such as harvest work, and those of a permanent nature, such as caring for livestock.[4] Therefore, the language of § 1101(a)(15)(H)(ii)(a) permits all job occupations within the agricultural field, not just seasonal ones, to be certified as H2A jobs.

In deciding how long such a job may be held on a "temporary" basis, we referred to two sources. First, the dictionary definition of the word "temporary"

___

[2] Proposed 8 C.F.R. § 214.2(h)(3)(vi)(B). The Department of Agriculture has submitted a brief statement that it agrees with the INS proposal.

[3] 26 U.S.C. § 3121(g); 29 U.S.C. § 203(f).

[4] Thus, we disagree with the Department of Labor's apparent argument that H2A workers may not fill permanent jobs that an employer needs to fill on a temporary basis — for example, because the regular American employee has fallen ill or extra hands are needed during a busy period.

refers to a limited period of time.[5] Second, we examined the existing INS and Department of Labor regulations governing H2 workers. The Department of Labor's regulations for H2 workers state that temporary labor certifications "shall never be for more than eleven months." 20 C.F.R. § 655.206(b)(1). Similarly, INS's H2 regulations provide that the petition will be approved for the length of the certificate issued by the Department of Labor (eleven months) or, if no date is given on the certificate, "approval of the petition will not exceed 1 year." 8 C.F.R. § 214.2(h)(6)(i). Thus, although the regulations provide for extensions,[6] the basic rule for H2 petitions is that a "temporary" job means one for a year or less.[7]

These regulations reflect the present administrative interpretation of the word "temporary" under the H2 provision and are consistent with the common meaning of the word "temporary." One would expect that the same word would have the same meaning within a single sentence — *i.e.*, that "temporary" would have the same meaning in both § 1101(a)(15)(H)(ii)(a) and (b). There is nothing in either the language of the statute or the legislative history that would lead us to question this otherwise self-evident proposition. Therefore, we believe that the definition of temporary for H2A workers should be the same as that for H2 workers: twelve months or less. It may be that there are unusual circumstances where a "temporary" job might last longer than a year.[8] Nevertheless, a blanket assumption that all jobs are "temporary" simply because the alien cannot occupy a job — any job — for more than three years, as proposed by INS, appears to us to be an interpretation not supported by the statute.[9]

In view of all these factors, we believe that in order to determine whether a particular job is "temporary" within the meaning of § 1101(a)(15)(H)(ii)(a), INS and the Department of Labor must focus upon the employer's need. If an employer makes a *bona fide* application showing that he needs to fill a job on a temporary basis, the work is "of a temporary or seasonal nature." It is irrelevant whether the job is for three weeks to harvest a crop or for six months to replace a sick worker or for a year to help handle an unusually large lumber contract. What is relevant is the employer's assessment — *evaluated, as required by*

---

[5] Temporary is defined as "[l]asting for a time only; existing or continuing for a limited time; not permanent; ephemeral; transitory." *Webster's New International Dictionary* 2598 (2d ed. unabridged 1958).

[6] 8 C.F.R. § 214.2(b)(10) (extensions authorized in increments of not more than twelve months).

[7] Indeed, the longer the employer needs a "temporary" worker, the more likely it would seem that the job has in fact become a permanent one. Thus, we assume that INS takes an increasingly careful look at repeated petitions for the same job. INS regulations already forbid extensions that would permit the alien to stay for more than three years. 8 C.F.R. § 214.2(h)(10).

[8] *See Wilson* v. *Smith*, 587 F. Supp. 470 (D.D.C. 1984) (H2 application approved for nanny until child was old enough for day care).

[9] Moreover, the blanket three-year provision threatens the integrity of the Immigration and Nationality Act, which already has a provision for immigrant visas for permanent positions. 8 U.S.C. § 1153(a)(6). Because the number of these "sixth preference" visas is strictly limited (10 percent of each year's total visa quota), employers would be strongly tempted to call a permanent position temporary in order to fill it with an H2A worker. As one court observed:

The INS's present interpretation of [H2] prevents the likelihood of so-called "temporary" workers from entering this country permanently under the less rigorous standard of [H2], rather than applying properly as immigrants under the more stringent [sixth] preference classification. . . .

*Volt Technical Services Corp.* v. *INS*, 648 F. Supp. 578, 581 (S.D.N.Y. 1986).

41

*statute, by the Department of Labor and the INS* — of his need for a short-term (as opposed to a permanent) employee. The issue to be decided is whether the employer has demonstrated a *temporary need for a worker* in some area of agriculture. The nature of the job itself is irrelevant. What is relevant is whether the employer's need is truly temporary.

This interpretation is supported in part by administrative and judicial interpretations of the H2 provision. As was stated in the leading case of *In re Artee*, 18 I. & N. Dec. 366 (1982):

> It is not the nature or the duties of the position which must be examined to determine the temporary need. It is the nature of the need for the duties to be performed which determines the temporariness of the position.

*Id.* at 367. In *Artee*, the INS reversed a long-standing rule that the functional nature of the duties of the job controlled its characterization in favor of determining that eligibility for an H2 visa was controlled by "the intent of the petitioner and the beneficiary concerning the time that the individual would be employed." *Id. See also In re Ord*, 18 I. & N. Dec. 285 (1982).

This position has been affirmed by the courts. Thus, in *Wilson v. Smith*, 587 F. Supp. 470 (D.D.C. 1984), the court held that a nanny was a "temporary" worker because the parents of the child only needed child care until the infant was old enough for day care:

> Plaintiffs have made a plausible case for their assertion that their need for live-in help is temporary, based on their daughter's youth. . . . The Wilsons have credibly established that their need will end in the "near, definable future."

*Id.* at 473 (quoting *Artee*). The court did not focus on whether those engaged in child care occupy a permanent job function, although they arguably do since child care could be said to last at least until children enter high school. What the court based its ruling on was its determination that the parents only needed the nanny for a short period, until their child entered day care.

Similarly, in *Volt Technical Services Corp. v. INS*, 648 F. Supp. 578 (S.D.N.Y. 1986), the court adopted the *Artee* standard: a temporary job is one where "it is clearly shown that the petitioner's need for the beneficiary's services or labor is of a short, identified length, limited by an identified event located in time." *Id.* at 580. In doing so, the court recognized that aliens could be hired as engineers — a permanent job description — if they were hired by a temporary help service "to fill a specific contract with a client and the beneficiaries entered the United States with the understanding that their employment was to be for a temporary period." *Id.* at 581.

Finally, in *North American Industries, Inc. v. Feldman*, 722 F.2d 893 (1st Cir. 1983), the court discussed at some length the position of a man who programmed and operated computerized lathes and high-speed gear cutters. The underlying job was permanent. Indeed, the issue in the case was whether

the alien, having held the position as an H2 worker on a temporary basis, could apply to hold it on a permanent basis using a "sixth preference" visa. As in the other cases cited above, the U.S. Court of Appeals for the First Circuit noted that "the INS has conceded that the needs of an employer should determine whether a position offered an alien is temporary or permanent." *Id.* at 900 (citing *Artee*).[10]

We understand that focusing on the employer's need may encourage numerous applications by employers to the Department of Labor and that it is often difficult to distinguish between temporary and permanent jobs, especially if the employer is not honest. Nevertheless, we believe a one-year limitation will serve as at least a restraint, if not a disincentive, to dishonesty. We also believe it best reflects Congress' intent and will be administratively workable.

## Conclusion

In determining what the word "temporary" means, we have relied on a number of sources: the language of the statute, the legislative history, the dictionary meaning of the word, the administrative interpretation of similar language, and the relevant case law. Based on all of these factors, we believe that the word "temporary" in 8 U.S.C. § 1101(a)(15)(H)(ii)(a) refers to any job in agriculture where the employer needs a worker for a limited period of time, generally of less than one year's duration.

DOUGLAS W. KMIEC
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[10] *See also Hess* v. *Esperdy*, 234 F Supp. 909 (S.D.N.Y. 1964); 9 *Foreign Affairs Manual* § 41 55, n.17.