# MATTER OF SEA, INC.

## In Visa Petition Proceedings

### LIN 88 147 0105

*Decided by Commissioner on November 16, 1988*

(1) Substantial academic course work in a professional field combined with professional experience and achievement may be considered equivalent to a bachelor's degree.

(2) Ordinary experience alone cannot be equated with a college degree.

(3) Experience which is substituted for education *must* include the theoretical and practical application of specialized knowledge required at the professional level of the occupation. It cannot be concluded that *any on-the-job experience* related to a professional activity may be substituted for academic education.

ON BEHALF OF PETITIONER: Gregory K. McCall
Perkins Coie
1201 Third Avenue, 40th Floor
Seattle, Washington 98101-3099

This is an appeal from the adverse decision of the director, Northern Regional Service Center. The appeal will be sustained.

The petitioner, which has 50 employees, indicates it is a wholly owned subsidiary of Datamarine International, Inc., a designer and manufacturer of marine navigation equipment. The petitioner designs, manufactures, and markets marine radio communications equipment. It seeks to classify the beneficiary, a native and citizen of Denmark, as a nonimmigrant of distinguished merit and ability pursuant to section 101(a)(15)(H)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(i) (1982), based on its intent to employ him as an electrical design engineer.

The director determined that the petitioner had failed to establish that the proposed position is within the professions or requires a person of distinguished merit and ability. The director also found that the petitioner had failed to establish that the beneficiary has at least a bachelor's degree or its equivalent or that he is preeminent in his field of endeavor.

On appeal, counsel asserts that the proposed position requires a professionally qualified person. Counsel also asserts that the benefi-

ciary has the equivalent of a bachelor's degree in engineering technology. Both of counsel's assertions are supported by the record.

Distinguished merit and ability may be established in two ways. One way is to demonstrate that a beneficiary is a member of the professions within the meaning of section 101(a)(32) of the Act, 8 U.S.C. § 1101(a)(32) (1982). *Matter of General Atomic Company,* 17 I&N Dec. 532 (Comm. 1980); *Matter of Essex Cryogenics Industries, Inc.,* 14 I&N Dec. 196 (D.A.C. 1972). Another way is to show that the beneficiary is a person of prominence, renown, or preeminence in his or her field of endeavor. *Matter of Shaw,* 11 I&N Dec. 277 (D.D. 1965); H.R. Rep. No. 851, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad. News 2750, 2752-53.

Since no representations have been made that the beneficiary is preeminent or that the job in question requires preeminence, consideration will be limited to the issues relating to professional standing.

## PROFESSIONAL POSITION

"Profession," as defined by section 101(a)(32) of the Act, contemplates knowledge or learning, not merely skill, of an advanced type in a given field gained by a prolonged course of specialized instruction and study of at least baccalaureate level, which is a realistic prerequisite to entry into the particular field of endeavor. *Matter of Ling,* 13 I&N Dec. 35 (R.C. 1968); *Matter of Shin,* 11 I&N Dec. 686 (D.D. 1966). That section of law states "the term 'profession' shall include but not be limited to architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools, colleges, academies, or seminaries."

The petitioner, "a small U.S. technology-based manufacturing entity," plans to design marine radio communications equipment for the European market. In order to do so, it requires the beneficiary's services for a 2-year period to help design marine radio communications equipment to meet the European nations' regulations; test prototypes of equipment and prepare the test results for submission to the regulatory bodies of the European countries for approval; and provide technical input to the petitioner's engineering staff. According to counsel, five electrical engineers with bachelor's degrees will assist the beneficiary in designing and developing the necessary marine radio communications equipment.

The petitioner states that it has purchased a facility in Denmark which it will use to test, develop, and market equipment it will design at its United States facility. After completion of the design and prototype testing phase of the project, the beneficiary will ap-

parently be transferred to the European subsidiary of the petition-er's parent company Datamarine "to establish a technical and type acceptance facility at Datamarine's recently purchased European plant."

In support of the appeal, counsel submits a copy of an advertise-ment in Danish for the proposed position which he states was placed in Danish trade journals. The advertisement states that the applicant must be a "graduated electrical engineer" or have "equivalent technical background" and must have 3 to 5 years of experience in the development and design of HF/SSB marine radios.

Counsel asserts that the duties of the proposed position as de-scribed by the petitioner match the descriptions given in the De-partment of Labor's *Dictionary of Occupational Titles (4th ed. 1977)* for the occupation of electronics or electrical design engineer. Ex-amination of this publication reflects the proposed duties are, in fact, similar to those of an electronics or electrical design engineer.

The *Occupational Outlook Handbook (1988–89)* indicates on page 52 that a bachelor's degree in engineering is a realistic prerequisite for engineering positions. Furthermore, as noted previously, when Congress defined the term "profession" by example in section 101(a)(32) of the Act, it specifically listed engineers as within the professions. Accordingly, it is concluded the position offered the beneficiary is a professional one which normally requires at least a baccalaureate-level degree in electrical engineering.

## WORK EXPERIENCE EQUIVALENT TO A DEGREE

The beneficiary in this proceeding has not completed formal bac-calaureate-level education, but counsel asserts that he has the equivalent of a bachelor's degree in engineering technology. Coun-sel correctly notes that case law accommodates those instances where persons are recognized as members of the professions with-out the normally required academic degrees. *See Matter of Yaakov*, 13 I&N Dec. 203 (R.C. 1969); *Matter of Arjani*, 12 I&N Dec. 649 (R.C. 1967); *Matter of Bienkowski*, 12 I&N Dec. 17 (D.D. 1966); *Matter of Devnani*, 11 I&N Dec. 800 (Acting D.D. 1966). However, it should be noted that there are no published Service decisions where a person with no formal college-level education has been rec-ognized as a member of the professions.

The beneficiaries in the four cited cases all had formal college-level academic education, specialized training in their subject areas, and many years of responsible experience in their fields.

Moreover, all four beneficiaries had attained professional standing and recognition.

Experience which is substituted for a portion of education must include the theoretical and practical application of specialized knowledge required at the professional level of the occupation. Substantial academic course work in a professional field combined with professional experience and achievement may be considered equivalent to a bachelor's degree.

The beneficiary in this proceeding, like the beneficiaries in *Matter of Yaakov, supra; Matter of Arjani, supra; Matter of Bienkowski, supra;* and *Matter of Devnani, supra,* has completed a substantial amount of college-level education in his field. In addition, he has many years of professional experience in his field, and he has received professional recognition. The record documents the beneficiary's receipt of demonstrable professional training during the course of his experience.

In January 1964, the beneficiary successfully completed an apprenticeship as a radio mechanic. He then attended Odense Teknikum (Odense Engineering College) in Odense, Denmark, where electronics and telecommunications were his special field of study. In October 1967, he passed the examinations necessary for receiving a diploma at Odense Teknikum and was given the title "electrical engineer." He therefore became a "Teknikumingenior."

An evaluation from an organization which evaluates foreign education states that the beneficiary's formal education is equivalent to a 2-year associate of arts degree in engineering technology with a specialization in electrical engineering from an accredited United States community college. The evaluation refers to the course of study at Odense Teknikum as a 3-year program.

This Service uses an evaluation by a credentials evaluation organization of a person's foreign education as an advisory opinion only. Where an evaluation is not in accord with previous equivalencies or is in any way questionable, it may be discounted or given less weight.

The evaluation of the beneficiary's foreign academic credentials in this proceeding appears reasonable. The evaluator's reference to the beneficiary's course of study as 3 years long is corroborated by a statement from the Danish Ministry of Education that the duration of the theoretical study at a teknikum is 3 years. This statement also refers to the degree of "Teknikumingenior" as the "Danish Bachelor of Science in Engineering."

Moreover, the beneficiary completed his 3-year course of study at Odense Teknikum when he was almost 25 years old. After passing

examinations in a full range of subjects relating to the field of engineering, he was given the title of "electrical engineer."

In 1967, the beneficiary was admitted as a member to the Association (Society) of Engineers (Ingenior-Sammenslutningen), Copenhagen, Denmark. According to the following English translation submitted by counsel, an excerpt from *Krak*, Volume 4, an official Danish publication containing information about Danish organizations, also provided by counsel, states:

> The purpose of The Society of Engineers is to gather together engineers who are graduates of the officially recognized Danish polytechnical institutes which emphasize a technical/scientific education. The theoretical instruction is a four year program, of which specialized instruction in the field comprises between two years and three months and four years and four months. In addition engineers are accepted into the Society who have diplomas from comparable foreign institutions.

The statement from the Danish Ministry of Education referred to above indicates that "Teknikumingeniors" are, subject to their qualifications, employed alongside "Akademingeniors" (graduates of the Engineering Academy of Denmark) and "Civilingeniors" (graduates of the Technical University of Denmark and of the Aalborg University Center). According to counsel, at the time the beneficiary received his degree, there was no "Akademingenior" program, but the beneficiary has worked along side "Akademingeniors" in several companies. Counsel asserts that an "Akademingenior" has a bachelor's degree. He also asserts that a "Civilingenior" has a master's degree.

Until 1974, the Office of Education of the United States Department of Health, Education, and Welfare evaluated foreign education for the Service. An evaluation of a "Civilingenior" degree performed by that Department found the degree in question to be equivalent to a United States master's degree. An evaluation of another "Civilingenior" degree by that Department found it to be equivalent to a 4-year United States degree plus approximately 1 year of advanced study.

Although the beneficiary's formal education is not equivalent to a bachelor's degree in his field, it is asserted that he completed his education at a time when there was no baccalaureate-level "Akademingenior" program. A parallel may be drawn to *Matter of Yaakov, supra,* where no school in the beneficiary's country of residence offered degrees in library science at the time the beneficiary, who was a librarian, resided there.

The evaluation of the beneficiary's foreign education states that he had 20 years of work experience in his field. Evidence in the record documents his experience between 1969 and 1988. The following is a summary of that experience:

(1) From February 1, 1969, to October 21, 1971, as a low current engineer for S.P. Radio.

(2) From December 1, 1971, to May 31, 1978, as a "type approval" engineer for Danish Communication Equipment, later reorganized as Danish Marine Communication (DanCom), responsible for obtaining type approval for SSB marine communications equipment from the regulatory authorities in European countries.

(3) From June 1, 1978, to October 31, 1983, as president and director of engineering for Commar Navigation Skorping.

(4) From August 1, 1983, to April 9, 1985, as chief engineer for the communications equipment development team of Danish Marine Communication (until October 1983 as a full-time consultant while involved in evening and weekend winding down activities at Commar which ceased development and production efforts in mid-1983).

(5) From May 25, 1985, to May 30, 1988, as an engineer directing the new product development efforts of Gorm Niros.

In this proceeding, in spite of the beneficiary's lack of a formal baccalaureate-level degree, upon graduation from Odense Teknikum in 1967, he was admitted as a member of an organization which requires a 4-year degree for membership. Descriptions of the beneficiary's job duties in all his positions listed above demonstrate that these duties required the theoretical and practical application of specialized knowledge required at the professional level of the occupation.

It is noteworthy that the beneficiary's early employment experience shows a progression to more responsible duties. Specifically, during the earlier years of the beneficiary's work experience, under the direction and tutelage of an experienced electrical engineer who was one of Denmark's leading SSB radio engineers, the beneficiary mastered the theoretical aspects of electrical engineering for SSB radio communications and the type approval process of various countries. He ultimately became an expert in this type of engineering work and a leading Danish SSB radio communications engineer.

Significantly, the petitioner states that the beneficiary has worked for several major Danish electronics firms. Also, according to counsel, S.P. Radio and DanCom are two of the leading European manufacturers of marine radio equipment.

From the record it is clear that the beneficiary has education, experience, and professional attainments which are equivalent to at least a bachelor's degree in electrical engineering in the United States. He therefore qualifies for classification as a member of the professions.

ORDER: The appeal is sustained. The decision of the director is withdrawn, and the petition is approved.