Veselin VUCINIC, Petitioner,

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE and Alfred J. Urbano, District Director, United States Immigration and Naturalization Service, Respondents.**

Veljko STANISIC, Petitioner,

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE and Alfred J. Urbano, District Director, United States Immigration and Naturalization Service, Respondents.**

Civ. Nos. 65–9, 65–10.

United States District Court
D. Oregon.

July 9, 1965.

**114**

Gerald H. Robinson, Portland, Or., for plaintiffs (petitioners).

Donal D. Sullivan, Asst. U. S. Atty., Portland, Or., for respondent.

EAST, District Judge.

The above-named petitioners in the above consolidated matters are nationals of Yugoslavia, and each was a member of the crew of the M/V SUNADIJA, of Yugoslavian registry, on January 4, 1965. Vucinic was an ordinary seaman and Stanisic was the radio operator.

During the night of January 4, 1965, while the M/V SUNADIJA was in the Port of Coos Bay, Oregon, the petitioners, each holding an entry permit as visiting seamen issued by the respondent Naturalization Service, deserted the ship, with the intention of remaining in the United States.

The respondent Alfred J. Urbano (Urbano), District Director for Oregon, when advised of the desertion, revoked the petitioners' entry permits. 8 U.S.C. § 1282(b) (1964 ed.).

On January 7, 1965, the petitioners sought of Urbano parole to the United States pursuant to the provisions of 8 U.S.C. § 1253(h) (1964 ed.) on the grounds that each of them was nonsympathetic to the averred Communist Government of Yugoslavia, and should they return to Yugoslavia they would be subjected to physical persecution for their political beliefs.

Urbano on January 7, 1965 caused the petitioners to be interrogated by person-

nel of the respondents' Portland office, and, based upon the record of such interrogation, found in the exercise of his discretion that petitioners' grounds for parole were wanting, denied their applications for parole, and ordered them excluded and returned to their ship.

The petitioners then instituted these proceedings, seeking injunctive relief from Urbano's orders. Petitioners claimed they had sufficient entry status to entitle them to a hearing before a special inquiry officer, prescribed for regular deportation proceedings under 8 U.S.C. § 1252(b) (1964 ed.). An administrative grant of deportation suspension "has historically been exercised as an integral part of the deportation proceedings before the special inquiry officer." Glavic v. Beechie, 225 F.Supp. 24, 26 (S.D. Tex.1963), aff'd. 340 F.2d 91 (5th Cir. 1964). This claim of a right to a special inquiry officer hearing was, and is, untenable. The sections of the Immigration and Nationality Act dealing solely with alien crewmen, 8 U.S.C. §§ 1281–1287 (1964 ed.), permit revocation of a crewman's conditional entry permit when, as was true here, the crewman "does not intend to depart on the vessel * * * which brought him * * *." 8 U.S.C. § 1282(b) (1964 ed.). And that same section further provides that "[N]othing in this section shall be construed to require the procedure prescribed in section 1252 [8 U.S.C. § 1252(b) (1964 ed.), discussed, supra,] to cases falling within the provisions of this subsection." And see Glavic v. Beechie, supra. However, pursuant to authority granted by 8 U.S. C. § 1182(d)(5) (1964 ed.), the Attorney General has promulgated a regulation authorizing a District Director to parole into the United States an alien crewman "who alleges that he cannot return to a Communist, Communist-dominated, or Communist-occupied country because of fear of persecution in that country on account of * * * political opinion. * * *" 8 C.F.R. § 253.1(e) (1965). This regulation, relating expressly and solely to alien crewmen, made it unnecessary for this Court to decide the issue of

entry status that has, in some cases, proved crucial in denying certain non-crewmen aliens the opportunity to establish, during regular deportation proceedings, the likelihood of persecution for race, religion or certain opinions if deportation occurred. See, e. g., Leng May Ma v. Barber, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958).

On January 18, 1965, this Court stayed any contemplated exclusion order of the petitioners and referred their causes back to Urbano for the purpose of holding an evidentiary hearing to receive such testimony and evidence the petitioners desired to produce in support of their claim of physical persecution if returned to Yugoslavia. On January 19 and 20, 1965, Urbano caused the evidentiary hearing to be held by William L. Pattillo (Pattillo), Deputy District Director for Oregon, and petitioners called and interrogated all witnesses and produced all evidence of their choice.

Based upon the record of such hearing, Urbano, on January 25, 1965, in the exercise of his discretion, found that:

(a) The petitioners, upon their return to Yugoslavia, would probably be subjected to penalties provided by law for their voluntary desertion of their ship, and

(b) The petitioners had failed to prove their claim of physical persecution for their political beliefs upon their return to Yugoslavia,

and accordingly denied the petitions for parole.

On January 27, 1965, the petitioners moved this Court to review Urbano's decision and order of January 25, 1965, on the grounds that the same was arbitrary, capricious, was not supported by the evidence, and that Urbano was biased against the petitioners.

The petitioners noticed the discovery depositions of Urbano and Pattillo, and this Court denied Urbano's and Pattillo's request for relief from such discovery. These depositions were taken on May 18, 1965, and have been filed herein, as well as the complete administrative files of the respondent Service's Oregon office relating to the petitioners, for review by this Court *in camera*. Also, the record of the evidentiary hearing is now before this Court.

The petitioners and Urbano have each filed motions for summary judgment in their respective favor upon the record before this Court.

At the threshold, the Court faces a challenge to its jurisdiction to review the proceedings before Urbano. To support its challenge, the Government cites 8 U.S.C. § 1105a(a) (1964 ed.), which limits review of certain determinations to appropriate Courts of Appeals. However, the indicated statute applies solely to judicial review "of all *final orders of deportation* heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings *under section 1252(b) of this title* or comparable provisions of any prior Act, * * *." [Emphasis supplied.] By its very terms the provision is inapplicable to this case, even as interpreted in Foti v. Immigration Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963) to include administrative denial of suspension of deportation sought pursuant to 8 U.S.C. § 1254(a)(1)(1964 ed.). The instant proceedings occurred under the provisions of the Immigration and Nationality Act relating solely to alien crewmen, 8 U.S.C. §§ 1281–1287 (1964 ed.), and 8 C.F.R. § 253.1(e) (1963), supra, permitting parole for alien crewmen. Those statutes and that regulation are completely silent regarding judicial review of proceedings before a District Director relating to alien crewmen.

In Glavic v. Beechie, supra, the Court, facing a problem virtually identical to the one here, granted review, without apparent issue, concern, or discussion, under the judicial review section of the Administrative Procedure Act, 5 U.S.C. § 1009 (1964 ed.). While I question Glavic's failure to examine the assumption of jurisdiction more thoroughly, I conclude its result sound in that the issues presented there and in these proceedings deal with fundamental

Constitutional questions of due process. Were the petitioners in custody, they could raise these Constitutional issues in a habeas corpus proceedings; in the absence of custody, there is still no sound judicial reason why the petitioners cannot invoke the general jurisdiction of a district court to review administrative decision and order upon the Constitutional issue of lack of due process at the hands of the administrative agency or person. The liberty of a claimant on bail or personal recognizance in lieu of custody, cannot be a factor in determining whether a district court has jurisdiction to hear a federal claim. At liberty or in custody only determines the nature of the proceedings. I am not concerned with whether Congress could deny aliens in the position of these seamen judicial review. It has not explicitly done so, and I cannot conclude that it has done so implicitly.

■ Congressional denial of review should be clearly indicated. Barefield v. Byrd, 320 F.2d 455 (5th Cir. 1963), cert. den. 376 U.S. 928, 84 S.Ct. 675, 11 L.Ed. 2d 624 (1964).

A further problem relating to reviewability is posed by these provisions of 5 U.S.C. § 1009 (1964 ed.):

"Judicial review of agency action

"Except so far as * * * (2) agency action is by law committed to agency discretion.

"(a) Any person suffering legal wrong because of any agency action, * * * shall be entitled to judicial review thereof.

* * * * * *

"(e) So far as necessary to decision * * * the reviewing court shall * * * (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an *abuse of discretion* * * *; (2) contrary to constitutional right. * * * *"
[Emphasis supplied.]

The foregoing quotation from § 1009 produces an unacceptable result if read literally. By its terms, the statute grants a court power to review an abuse of discretion except so far as the agency may exercise discretion. The exception altogether consumes the power. However, as the leading authority has suggested, "[N]othing in the legislative history shows an intent to produce such a drastic change; probably no one during the Act's preparation put these words together in this juxtaposition." Davis, Administrative Law Text § 28.16 (1958). To solve the verbal puzzle, Davis suggests the word "committed" be emphasized. "So far as the action is by law 'committed' to agency discretion, it is not reviewable— * * *; it is not 'committed' to agency discretion to the extent that it is reviewable. The two concepts 'committed to agency discretion' and 'unreviewable' have in this limited context the same meaning. The result is that the pre-Act law on this point continues." Ibid.

It is certain that the granting or withholding of an alien crewman's parole into the United States under the Attorney General's regulation, 8 C.F.R. § 253.1(e) (1965), lies within the District Director's "discretion" in the sense that he is responsible for receiving and weighing the relevant evidence and that the courts will not substitute judgment. However, I am unable to conclude that the decision relating to parole is "committed to [the Director's] discretion" in the sense, to apply Davis's analysis, of making his findings, conclusions and order unreviewable—even for arbitrariness, capriciousness, or abuse of discretion. Moreover, courts have often refused to recognize even a fairly explicit denial of reviewability when the issues of arbitrariness or abuse of discretion are raised. Hamel v. Nelson, 226 F.Supp. 96 (N.D.Calif. 1963).

"[Section 1009(a)] * * * does not extend 'the jurisdiction of the federal courts to cases not otherwise within their competence. * * The purpose of § [1009(a)] is to define the procedures and manner of judicial review of agency action, rather than to confer jurisdiction up-

on the courts.' Ove Gustavsson Contracting Company v. Floete, 2 Cir. 1960, 278 F.2d 912, 914." Barnes v. United States, 205 F.Supp. 97, 100 (D.Mont.1962).

■■ I conclude that the exception relating to discretion contained in 5 U.S.C. § 1009 (1964 ed.), does not deprive this Court of jurisdiction to review Urbano's findings, conclusions, and order upon the contentions of the petitions above outlined, and further that 5 U.S.C. §§ 1009(b)(e) provide procedures and scope of judicial review of Urbano's findings, conclusions, and orders upon the issues raised by the contentions of review of the petitions.

Having so concluded, it is my obligation to deal with the record of the evidentiary hearing upon which Urbano's findings, conclusions, and order are premised, under the searchlight of petitioners' contentions.

I have perused *in camera* the administrative files of respondent Service and find nothing therein that in anywise tends to impeach or discredit the discovery depositions testimony of Urbano and Pattillo.

■ I have reviewed the entire record as developed and placed before Urbano upon the petitioners' claim of physical persecution for political belief is returned to Yugoslavia, and conclude that Urbano did not abuse his discretion in denying the applications for parole, nor are his findings and order lacking a foundation. Evidence substantiating the petitioners' claim of physical persecution for their political beliefs is conspicuous by its complete absence.

The petitioners make no claim that Urbano's decision and order is illegal.

■ I find the entire record before Urbano and this Court devoid of any evidence whatsoever that Urbano acted fraudulently, arbitrarily, or capriciously in his evaluation of the evidence before him.

■ The petitioners have claimed Urbano was personally biased in denying their parole and that he should have been disqualified. The asserted bias is based in large part upon alleged facts known prior to the hearing. Under § 7(a) of the Administrative Procedure Act, 5 U.S.C. § 1006(a) (1964 ed.), disposition of allegations of bias is initially the agency's responsibility. The allegations are to be raised by "the filing in good faith of a timely and sufficient affidavit of personal bias or disqualification," and "the *agency* shall determine the matter as a part of the record and decision in the case." [Emphasis supplied.] However, the petitioners raised the issue of personal bias for the first time in these proceedings following the evidentiary hearing, and under the provisions of § 1006(a), as usually applied, lost their opportunity to assert the question of bias. Davis, Administrative Law Text § 12.06 (1958). "The issue of bias must be raised neither too soon nor too late." Ibid. Nevertheless, the Court has examined the record before it and finds the claims of bias groundless.

The evidentiary record discloses that each of these petitioners enjoyed a good civilian and governmental status in his country at the time he departed on the voyage ultimately bringing him to the United States, in spite of his now-avowed anti-Communistic political beliefs.

What "physical persecution," if any, they will receive upon their return to their own country, will be due to their voluntary desertion of their ship and other voluntary acts and averments occurring since.

These causes have aroused a great deal of public sympathy for the petitioners, all without full advice as to the facts and circumstances. Granted, the petitioners may be anti-Communistic in their political beliefs, and in all probability would be good citizens of the United States; nevertheless, Congress has not seen fit to provide for lawful entry or permanent refuge in the United States (other than by established quotas for citizens of nations with Communistic Governments) on the sole ground that those individuals are not sympathetic with that Communistic

118

Government. Neither Urbano nor this Court can make such legislation.

The respondents' motion for summary judgment in their favor should be allowed, and counsel for the respondents may submit appropriate order of summary judgment dismissing the petitioners' complaints and causes and dissolving the stay order now in effect.