MATTER OF ARTEE CORPORATION

In Visa Petition Proceedings

LOS-N-46504

*Decided by Commissioner November 24, 1982*

(1) In determining whether an alien is coming "temporarily" to the United States to "perform temporary services or labor" as required by section 101(a)(15)(H)(ii) of the Act, 8 U.S.C. 1101(a)(15)(H)(ii), the test is whether the need of the petitioner for the duties to be performed is temporary. It is the nature of the need, not the nature of the duties, that is controlling.

(2) *Matter of Contopoulos*, 10 I&N Dec. 654 (R.C. 1964), overruled.

(3) Because the business of a temporary help service is to meet the temporary needs of many clients, the nature of the petitioner's needs for the beneficiary is more or less continuous. Where as here there is a current shortage of the particular skill, the petitioner's need to supply this employee to its clients is ongoing, not temporary as required by section 101(a)(15)(H)(ii).

ON BEHALF OF APPLICANT: John A. Joannes, Esquire
3600 Wilshire Boulevard, Suite 1914
Los Angeles, California 90010

This case is before the Commissioner on certification of the Regional Commissioner's decision of June 2, 1982.

The petitioner is seeking to classify the beneficiaries under section 101(a)(15)(H)(ii) of the Act, 8 U.S.C. 1101(a)(15)(H)(ii), as machinists. The petitioner provides temporary help to technically-oriented firms.

The sole issue in this case is the temporary need of the petitioner for the services of the beneficiary. In a situation involving a "temporary help" service, the Service has found that such a service is qualified to be and remains the actual employer of the beneficiary. *See Matter of Smith*, 12 I&N Dec. 772 (D.D. 1968). The petitioner in this case is a temporary help service and I agree with the Regional Commissioner that it qualifies as a petitioner and is the actual employer of the beneficiaries. The Regional Commissioner found that, because of the current wide-spread shortage of machinists in the United States, the nature of the employment offered must be viewed as permanent and not temporary. The decision examined the use of the beneficiaries' services by the customer of the help service in reaching this conclusion. I do not believe that this is the proper view of the employment situation involved. The test of the

true nature of the temporary need for the position lies in examination of the temporary need of the temporary help service, not its customers.

Section 101(a)(15)(H)(ii) defines an H-2 temporary worker as an alien "who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such services or labor cannot be found in this country. . ." As noted in *Matter of Contopoulos*, 10 I&N Dec. 654, 657 (Acting R.C. 1964)," . . .both the coming to the United States and the performance of service or labor must be *temporary*, the term 'temporary' being used twice." The nature of the duties to be performed were controlling, not the intent of the petitioner and the beneficiary concerning the time that the individual beneficiary would be employed in that position.

The Service now views this interpretation as incorrect. It is not the nature or the duties of the position which must be examined to determine the temporary need. It is the nature of the need for the duties to be performed which determines the temporariness of the position. Under this interpretation the key question in *Contopoulos* is: "Can the petitioner credibly establish that she has not employed a mother's helper in the past and that her need for a mother's helper will end in the near, definable future?" Likewise, in the instant case, the primary question becomes: "Can Artee establish that they have not employed machinists in the past and will not need the services of machinists in the near, definable future?" Here, as in *Contopoulos*, we are considering the second temporary requirement of the statute which concerns the position itself and not the first requirement which relates to the intent of the alien to enter for a temporary period. The function of a temporary help service is to provide for the fluctuating needs of other enterprises for specified services. In this case the petitioner provides technically-oriented personnel of a skilled nature to industries requiring such services. The customers of the petitioner do not have a steady need for a specific number of employees. Their business fluctuates and in so changing, their personnel needs change. To meet their needs, the customers of the petitioner turn to the petitioner to provide temporary help. While it is true that the temporary help may be needed for periods of 2 to 3 years, it is also true that shorter periods can be involved and that the need of the customer may not continue.

The situation of a temporary help service differs, however. The business of a temporary help service is to meet the temporary needs of its clients. To do this they must have a *permanent* cadre of employees available to refer to their customers for the jobs for which there is frequently or generally a demand. By the very nature of this arrangement, it is obvious that a temporary help service will maintain on its payroll, more or less continuously, the types of skilled employee most in demand. This does not mean that a temporary help service can never

offer employment of a temporary nature. If there is no demand for a particular type of skill, the temporary help service does not have a continuing and permanent need. Thus a temporary help service may be able to demonstrate that in addition to its regularly employed workers and permanent staff needs it also hires workers for temporary positions. For a temporary help service company, temporary positions would include positions requiring skill for which the company has a non-recurring demand or infrequent demand.

There is currently a wide-spread shortage of skilled machinists in the United States. Because of this shortage, the petitioner, as a prudent business measure, has ensured that it can supply machinists to its customers. Its need to supply machinists to its customers is ongoing. Therefore, as long as this universal shortage of machinists exists, the nature of the need for the position with the petitioner is such that the duties are not temporary and will persist as long as the shortage.

In the absence of evidence that the petitioner has a non-recurring or infrequent demand for skilled machinists, the following order is entered:

**ORDER:** The petition is denied.