MARS JEWELERS, INC. and
J.J. Naran

v.

IMMIGRATION AND NATURALIZATION SERVICE and the United States of America.

No. 1:87–cv–2432.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 6, 1988.

Dale M. Schwartz, Troutman Sanders Lockerman & Ashmore, Atlanta, Ga., for plaintiffs.

Nina Hickson Perry, Office of U.S. Atty., Atlanta, Ga., for defendants.

**1.** Section 101(a)(15)(L) permits the grant of a temporary visa to an alien who:

 ... immediately preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his

ORDER

RICHARD C. FREEMAN, District Judge.

This action is before the court on plaintiffs' motion for summary judgment and defendants' motion for summary judgment. Both motions are opposed.

BACKGROUND

Plaintiffs filed this action to appeal the decision of the Immigration and Naturalization Service [INS] denying a permanent immigration visa to plaintiff-beneficiary J.J. Naran [beneficiary]. The court finds it unnecessary to review all the facts in this case as they are not in dispute. In brief, the beneficiary, a citizen of the United Kingdom, has been a resident of the United States since October 5, 1984 when INS approved a nonimmigrant visa petition. Between 1984 and this appeal, the beneficiary has served as president and chief executive officer of plaintiff Mars Jewelers, Inc., a wholly-owned subsidiary of Naran Jewelers, Ltd., a British corporation.

Mars Jewelers, Inc. is a corporation organized under Texas law and qualified to do business in Georgia. The corporation is in the business of designing, manufacturing, selling, importing, and exporting custom 22-karat gold jewelry. Under the beneficiary's direction, Mars Jewelers was founded and has generated sales of almost $1,000,000.00 since 1984.

INS approved plaintiff Mars Jewelers' 1984 petition for a nonimmigrant visa for the beneficiary under section 101(a)(15)(L) of the Immigration and Nationality Act [INA], which provides for the admission of "intracompany transferees" on a *temporary* basis. 8 U.S.C. § 1101(a)(15)(L) (1970).[1] In 1986 Mars Jewelers petitioned for a permanent immigration visa for the beneficiary under a special category for

services to the same employer or a subsidiary or affiliate thereof *in a capacity that is managerial, executive, or involves specialized knowledge,...*

8 U.S.C. § 1101(a)(15)(L) (1970) (emphasis added). Temporary visas issued under this scheme to intracompany transferee are referred to a "L" visas.

employer-sponsored foreign workers. Under INA section 203(a)(6), the "Sixth Preference" category provides permanent immigration status for "qualified immigrants who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States." 8 U.S.C. § 1153(a)(6) (1970). Immigrants seeking permanent visas under the Sixth Preference usually must obtain a certificate from the Secretary of Labor establishing that there are insufficient domestic workers to perform such labor and that the employment of foreign workers will not adversely affect domestic workers similarly employed. 8 U.S.C. § 1182(a)(14) (1970). The Secretary of Labor has determined that certain executives and managers are "precertified" and therefore not subject to the certification procedures set forth in the Department of Labor regulations. *See* 20 C.F.R. § 656.10(1987). Intracompany transferees are among those immigrants who are granted "precertified" status under Schedule A, Group IV of the Regulations.[2]

On February 9, 1987, the INS Southern Regional Service Center in Dallas, Texas denied Mars Jewelers' petition seeking Sixth Preference immigration status for the beneficiary. The INS Administrative Appeals Unit [AAU] in Washington, D.C. dismissed petitioner's appeal on June 15, 1987. Thus, plaintiffs herein have exhausted their administrative remedies.

SCOPE OF REVIEW

INS is subject to the Administrative Procedure Act [APA]. 5 U.S.C. § 701 *et seq.* The APA provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> >
> > . . . .
> >
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> >
> > . . . .
> >
> > (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute. . . .
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

■ Generally review of a denial of a preference visa is limited to a determination of whether the denial was an abuse of discretion. *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir.1971). An abuse of discretion may be found if no evidence supports the denial by INS or if the decision by INS is based on an improper understanding of the law. *See Kaliski v. District Director of Immigration and Naturalization Service,* 620 F.2d 214 (9th Cir.1980).

In determining whether an abuse of discretion occurred, the reviewing court must give deference to INS' construction of the statutes it administers. *De Los Santos v.*

---

**2.** Schedule A, Group IV applies to:

(1) Aliens who have been admitted to the United States in order to work in, and who are currently working in, managerial or executive positions with the same international corporations with which they were continuously employed as managers or executives outside the United States for one year before they were admitted.

(2) Aliens outside the United States who will be engaged in managerial or executive positions with the same international corporations or organizations with which they have been continuously employed as managers or executives outside the United States for the immediately prior year.

20 C.F.R. § 656.10(d).

*INS,* 690 F.2d 56 (2d Cir.1982). Likewise, the reviewing court is not free to make findings of fact, but instead, must rely solely on the administrative record that was before the Service. *Tongatapu Woodcraft Hawaii Ltd. v. Feldman,* 736 F.2d 1305, 1308 (9th Cir.1984).

DISCUSSION

On appeal, plaintiffs raise the following issues: 1) whether defendant acted arbitrarily and capriciously and not in accordance with law in denying plaintiffs' Sixth Preference Immigrant Visa Petition; 2) whether defendant acted arbitrarily and capriciously and not in accordance with the law in promulgating its recent amendments to the regulatory scheme governing intracompany transferees; and 3) whether the challenged regulatory amendments have a *de facto* discriminatory effect against intracompany transferees of small businesses, thus denying constitutional equal protection. The court will not reach the second and third issues because, as will be discussed below, the recently promulgated regulations do not apply to plaintiffs' application for Sixth Preference status.

At the heart of this appeal is a dispute over which regulations should apply to plaintiffs' application and which regulations were in fact applied. Plaintiffs contend, and defendant apparently concedes, that plaintiffs' application should have been decided under the 1983 INS regulations that were in effect at the time of plaintiffs filed their petition in February 1986. Plaintiffs argue that *in fact* their petition was decided under more restrictive regulations promulgated in 1987.

Under the Department of Labor regulations, certain *executives* and *managers* are "precertified" and therefore may apply directly to INS for Sixth Preference status. *See* 20 C.F.R. § 656.10 (1987). Plaintiffs are seeking precertified intracompany transferee status for the beneficiary. The disputed INS regulations are those that define "managerial capacity" and "executive capacity." For the sake of comparison, the court will set forth both the 1983 regulations and the 1987 regulations:

Under the 1987 regulations, "managerial capacity" means

> an assignment within an organization in which the employee *primarily* directs the organization or a department or subdivision of the organization, supervises and *controls the work of other supervisory, professional, or managerial employees,* has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) and exercises discretionary authority over day-to-day operations. The term manager does not include a first-line supervisor, unless the employees supervised are professional, nor does it include an employee who primarily performs the tasks necessary to produce the product and/or to provide the service(s) of the organization.

8 C.F.R. § 214.2(1)(1)(ii)(B) (1988) (emphasis added).

Under the 1983 regulations, "managerial capacity" meant:

> an assignment within an organization in which the employee directs the organization or a customarily recognized department or subdivision of the organization, controls the work of other employees, has the authority to hire and fire or recommend those actions as well as other personnel actions (promotion, leave authorization, etc.) and exercises discretionary authority over day-to-day operations. This does not include the first-line level of supervision unless the employees supervised are managerial or professional.

8 C.F.R. § 214.2(1)(1)(ii)(A) (1984).

Under the 1987 regulations, "executive capacity" means:

> an assignment within an organization in which the employee *primarily* directs the management of an organization, establishes the goals and policies of the organization, component or functions, exercises wide latitude in discretionary decision-making and receives only general supervision or direction from higher level executives, the board of directors or stockholders of the business. This definition does not include an employee who primarily performs the necessary tasks

to produce the product and/or to provide the service(s) of the organization.

8 C.F.R. § 214.2(1)(1)(ii)(C) (1988) (emphasis added).

Under the 1983 regulations, "executive capacity" meant:

an assignment within an organization in which the employee directs the management of an organization and establishes organization goals and policies, exercises a wide latitude in discretionary decision-making and receives only general supervision or directions from higher level executives, the board of directors, or stockholders of the business.

8 C.F.R. § 214.2(1)(1)(ii)(B) (1984).

The court has reviewed the February 9, 1987 decision of the Regional Service Center of the INS [INS decision] and the June 15, 1987 decision of the AAU [AAU decision]. For the reasons stated below, the court finds both the INS decision and the AAU decision to be an abuse of discretion.

The INS decision denying plaintiffs' petition for Sixth Preference status was based on the following factors: 1) plaintiff Naran supervises only four employees, none of whom is a professional or manager; 2) plaintiff did not submit sufficient evidence that he will devote the *majority* of his time to managerial duties; instead, the evidence indicates most of his time would be spent in non-managerial duties; 3) plaintiff will not be managing the "enterprise or a customarily recognized department or subdivision;" and 4) plaintiff has failed to demonstrate that he was "employed abroad in a position that was managerial or executive." INS Decision at 2, attached as Exhibit D to Brief of Mars Jewelers, Inc. and J.J. Naran in Support of Their Motion for Summary Judgment.

■ Examination of the first factor reveals that INS is placing undue emphasis on the size of plaintiffs' operation.[3] The court is unable to discern the source of the INS' concern with the size of plaintiffs' enterprise. Plaintiffs argue, and the court is persuaded, that under analogous INS provisions regulating the grant of temporary visas to managers and executives, the INS has imposed no requirements as to the number of employees supervised. *See, e.g., Johnson–Laird, Inc. v. INS,* 537 F.Supp. 52 (D.C.Ore.1981) ("L" visa available to sole proprietor as well as to corporation with only two employees). To limit the term "manager" to those persons who supervise a large number of employees (or limit the term "executive" to those persons who supervise large enterprises) would exclude small foreign corporations from expanding in the United States through subsidiary operations. The court believes such a limitation is not intended by Congress, which created the provisions for intracompany transferee managers and executives in order to facilitate international trade in this country. *See* H.R.Rep. No. 851, 91st Cong., 2d Sess. (1970), U.S.Code Cong. & Admin.News 1970, p. 2750. Thus, the court concludes that the efforts by INS to graft requirements as to the size of the organization are not in accordance with any law cited to the court and therefore are an abuse of discretion.

■ Likewise, the INS decision relied on the fact that of the four employees supervised by plaintiff, none was a professional or manager. The requirement that the employees supervised are professional or managerial does not apply under the 1983 regulations unless the INS has determined that plaintiff is engaged in "first-line level of supervision."[4] The INS decision fails to

3. Indeed, in defendant's memorandum in support of its motion for summary judgment, defendant correctly sets forth what plaintiffs must prove in order to qualify for Schedule A, Group IV treatment. None of these qualifying factors pertain to the size of the organization. Instead, the factors defendant delineates are the following: 1) a corporate relationship between petitioner and a foreign entity; 2) that the petitioner has been doing business in the United States for one year prior to filing the petition; 3) that

the alien beneficiary was "employed in a qualifying managerial or executive capacity abroad for the international firm for one year prior to the time of entry and at the time of filing the petition said alien was employed in a qualifying managerial or executive capacity." Defendant's Memorandum at 6–7.

4. *See* 8 C.F.R. § 214.2(1)(1)(ii)(A) (1984) (Managerial capacity "does not include the first-line

find, nor does the administrative record appear to indicate, that plaintiff was engaged in "first-line level of supervision." The court concludes that plaintiff was not in fact a first-line supervisor because the organization had no supervisors other than plaintiff and the evidence is uncontroverted that plaintiff reported only to the Board of Directors of the parent company in England. It is apparent that the INS was inappropriately applying its 1987 regulations to this factor. Under the 1987 regulations, one of the requirements of a manager is that he "supervises and controls the work of other supervisory, professional or managerial employees...." 8 C.F.R. 214.-2(1)(1)(ii)(B) (1988). This language is not in the 1983 regulations.

The second factor cited in the INS decision is that plaintiff does not devote the *majority* of his time to managerial duties. The court finds that despite protestations to the contrary, the INS is clearly—and erroneously—applying the 1987 regulations. The 1983 regulations are silent with respect to the percentage of time a person must expend on managerial or executive duties in order to qualify as a manager or executive. It was not until the 1987 regulations that the definitions were changed to include the word *primarily*. Under the current regulations, a person must *primarily direct the organization* (or management of an organization). Thus, the court finds the INS' reliance on this factor not in accordance with the law applicable to plaintiffs' application.

■ The third factor cited in the INS decision is that the plaintiff "generally will not manage the enterprise or a customarily recognized department or subdivision." This finding is not supported by substantial evidence. The administrative record is not extensive. Pursuant to plaintiffs' petition for Sixth Preference status, A.J. Naran, managing director of the parent company Naran Jewelers, sent a letter dated January 8, 1986 to INS indicating the beneficiary was an "executive officer" in the parent company and that he was sent to the United States to serve as "president"

of the wholly-owned subsidiary Mars Jewelers. The letter further states it was the beneficiary's responsibility to "establish and manage" the expanding business in the United States. Likewise, a letter dated April 4, 1984 from Mars Jewelers Vice President C.M. Patel states that the beneficiary was transferred to the United States "in an executive capacity to manage and oversee our U.S. business...." Plaintiffs' application for Sixth Preference status describes the beneficiary's duties as "President of jewelry company; will design, manufacture and sell gold jewelry; in charge of company sales and finance." The application states that the beneficiary's immediate supervisor is the Board of Directors. Thus, although there is some indication that the beneficiary's responsibilities were not entirely managerial or executive, the court finds the evidence uncontroverted that the beneficiary did in fact "manage the enterprise" known as Mars Jewelers. A finding to the contrary is support by no evidence and thus is an abuse of discretion.

■ Finally, the INS ruled that plaintiff did not demonstrate with sufficient evidence that he was engaged in managerial or executive capacities abroad for one year as is required to qualify for labor precertification under 20 C.F.R. § 656.10(1987). The uncontroverted evidence is that prior to coming to the United States in 1984, the beneficiary had been employed in England for at least eight years as a Managing Director of the parent company Naran Jewelers, Ltd. Documentation contained in the record indicates a managing director is the equivalent to a president or vice president of a United States company. Specifically, the record indicates the beneficiary was "the highest ranking official of the company in England." Brief in Support of Appeal at 3.

Additionally, when INS granted the beneficiary his temporary visa in 1984, INS was apparently satisfied that the beneficiary had served in a qualifying capacity abroad. *See* 8 U.S.C. § 1101(a)(15)(L). In denying plaintiffs' petition for Sixth Prefer-

level of supervision unless the employees supervised are managerial or professional.").

ence status, INS contends its earlier ruling was erroneous and therefore not binding. INS gives no explanation whatsoever as to what evidence supports this determination. In fact, in defendant's Motion for Summary Judgment defendant appears to concede that the beneficiary was employed abroad in qualifying activities and that the beneficiary fails only to satisfy the requirement that he be engaged in qualifying activities in this country. Federal Defendants' Memorandum in Opposition at 7. The AAU apparently disagreed with this finding by the INS because the AAU ruled that "[t]he beneficiary also served as managing director for the foreign firm for nearly ten years exercising a wide latitude of discretionary authority with is the hallmark of an executive or managerial position." AAU Decision, attached as Exhibit E to Brief of Mars Jewelers, Inc. and J.J. Naran in Support of Their Motion for Summary Judgment. An abuse of discretion occurs when no evidence supports a finding by the INS. The court finds such an abuse of discretion respecting the finding by INS that the beneficiary was not employed abroad in a managerial or executive capacity.

The AAU decision denying plaintiffs' appeal is equally fraught with abuse of discretion. In dismissing plaintiffs' appeal, the AAU wrote:

Two elements generally characterize an executive or managerial position which qualifies the beneficiary for blanket labor certification. Both must be present to satisfy the regulatory criteria found in 8 CFR 214.2(1)(1). First, the position must involve significant authority over the operations of an organization or of a major subdivision of an organization, 8 CFR 214.2(1)(1)(ii). Second, substantially all of the employee's duties must be at the managerial or executive level.

AAU Decision, attached as Exhibit E to Brief of Mars Jewelers, Inc. and J.J. Naran in Support of Their Motion for Summary Judgment. The court finds that the first requirement delineated by the AAU is a proper statement of law. The record on

appeal describes the beneficiary's duties as follows:

Mr. Naran has ultimate responsibility for all operations of Mars Jewelers, Inc., including such functions as financial accounting and reporting, assessment of consumer demand, marketing, and supervision of all U.S. employees. In addition, Mr. Naran coordinates the financing and supervises the preparation of all customs documents and declarations for the importing of substantial amounts of 22K gold and gold jewelry.

Brief in Support of Appeal at 4. The court is at a loss to understand how the AAU could conclude, based on the record before it, that plaintiff did not satisfy the definitions of manager or executive.

The court is perhaps more concerned by the second requirement set forth by the AAU. According to the AAU, "substantially all of the employee's duties must be at the managerial or executive level." The AAU decision states, "[t]he clear language of the regulation requires a petitioner to demonstrate a beneficiary is employed in a capacity that is *primarily or solely* managerial or executive in nature." (emphasis added). The court finds the requirement that the beneficiary be engaged *primarily* in qualifying activities is found in the 1987 regulations and not in the 1983 regulations. The applicable regulations are silent respecting the percentage of time a person must spend on qualifying activities.[5] It is clear to this court that the AAU decision is based on the 1987 regulations and thus is an abuse of discretion.

CONCLUSION

The court finds as a matter of law that the decision of INS to deny plaintiffs' Schedule A, Group IV, Sixth Preference petition was arbitrary and capricious, not supported by substantial evidence, and constituted an abuse of discretion. Likewise, the AAU decision dismissing plaintiffs' appeal is an abuse of discretion. The proper regulations to be applied in this case are

---

**5.** In light of this obvious, but mistaken, reliance on the 1987 regulations, the court questions the defendant's ability to make a good faith argu- ment pursuant to this motion that the 1983 regulations were applied. *See* Fed.R.Civ.P. 11.

the 1983 regulations that do not require that a petitioner be engaged *primarily* or *solely* in qualifying activities. Nor do the regulations require the petitioner undertake the qualifying activities on a *full-time* basis.

■ The court finds that the beneficiary was engaged in a managerial capacity in that he directed the organization known as Mars Jewelers, he controlled the employees, including exercising authority over personnel matters, and he exercised discretionary authority over the day-to-day operations of the enterprise. Additionally, the beneficiary was engaged in an executive capacity in that he directed the organization, established goals and policies, exercised discretionary decision-making authority, and received supervision only from the Board of Directors.

Accordingly, the court reverses the decisions of INS and AAU and remands this case to INS for action consistent with this order. Plaintiffs' motion for summary judgment is GRANTED. Defendant's motion for summary judgment is DENIED. The Clerk is DIRECTED to enter final judgment in favor of plaintiffs.

SO ORDERED.