**Karrie Ellis BLUMENFELD, a/k/a Karrie Lynne Ellis, and Mark Blumenfeld**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Commissioner of Immigration and Naturalization Service.**

**Civ. No. H–90–474 (PCD).**

United States District Court, D. Connecticut.

April 16, 1991.

Elizabeth B. Leete, Leete, O'Neill & Kosto, Hartford, Conn., for plaintiffs.

Carmen Espinosa Van Kirk, Asst. U.S. Atty., Hartford, Conn., for defendants.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

This is an action for review, under the Administrative Procedure Act, 5 U.S.C. §§ 703, 704, of the denial of a visa petition filed by plaintiffs on behalf of a citizen of the United Kingdom. Plaintiffs seek a declaratory judgment, under 28 U.S.C. § 2201, reversing the final decision of the Commissioner of the Immigration and Naturalization Service ("INS") and compelling defendants to approve their H–2 non-immigrant visa petition for the temporary employment of an alien as an "au pair" (child monitor). The parties' cross-move for summary judgment.

*Facts*

The following facts are undisputed. Plaintiffs are citizens and residents of the United States. Complaint at ¶ 2. Mark Blumenfeld is a physician and Karrie Blumenfeld is a nurse practitioner. *Id.* at ¶ 4. They are married and have four children, from 20 months to 17 years old. Plaintiffs employed Vikki Ann Price, a citizen of Great Britain, as an au pair through the Homestay, U.S.A. program from January 28, 1988 to January 29, 1989. Plaintiffs' Statement of Material Facts at ¶ 11. Price returned to Great Britain, but came back to the United States within a month and a half under a visitor visa, staying in the plaintiffs' home. United States Department of Labor ("DOL") Application at Item 3.

As the first step required in obtaining a non-immigrant temporary visa ("H–2"), on April 21, 1989, plaintiffs filed an Application for Alien Employment Certification to DOL through the Connecticut Department of Labor for the employment of Price as an au pair for a period of three years, from June 1, 1989 to June 1, 1992. *Id.* at Item 18(b). Plaintiffs described the position on the application form as:

> Care for four children (including baby with asthma), do laundry, clean kitchen and bathrooms, pick up after children and make beds. Drive children to appointments.

*Id.* at Item 13. The weekly hours listed by plaintiffs included Monday through Friday 9:00 a.m. to 5:00 p.m., 9:00 a.m. to 8:00 p.m. on Tuesday, and 9:00 a.m. to 1:00 p.m. on Saturday. *Id.* at Items 10–11. With the application, plaintiffs included proof of their attempt to recruit U.S. workers to fill the position. Copies of an advertisement run by plaintiffs in the help wanted section of the Hartford Courant from March 4, 1989 through March 8, 1989 offered the position as:

> AU PAIR care for 4 children. Ages 1½ to 17. (Baby has asthma), clean kitchen and bathrooms, pick up after children & drive to appts. 9–5 daily except 9–8 Tues, 9–1 Sat. Sun off. $5.00/hour. Need good references. Driver's License, (Foreign License ok), no smoking, live in or out.

On May 23, 1989, DOL denied certification, stating that "[a] certification cannot be

made under Department of Labor policies and procedures." The certifying officer further stated "[t]he employment opportunity is represented as temporary and the Department of Labor believes it can and should be offered to U.S. workers on a permanent basis."

On June 28, 1989, plaintiffs filed a Petition to Classify Non-immigrant as Temporary Worker or Trainee with the INS Eastern Regional Service Center in St. Albans, Vermont. 8 C.F.R. § 214(h)(4). At this stage, plaintiffs were afforded an opportunity to present "countervailing evidence" to show they did comply with DOL policies and procedures, and that the DOL should be overruled. 8 C.F.R. § 214.2(h)(4)(i)(B). Plaintiffs included with their application copies of the same advertisements, two letters of explanation from Mrs. Blumenfeld, an employment agreement with Price, and a brief. In her letter, Mrs. Blumenfeld stated that their four children each have particular needs for the au pair to fill. Letter from Mrs. Blumenfeld, dated March 15, 1989, attached to DOL Application. The oldest needs a driver to take her to and from an after school job and other activities. *Id.* The 13–year old has therapy appointments on Tuesday evenings, and needs supervision. *Id.* The 4–year old has a blood disorder which requires dietary monitoring, and the 20–month old has asthma. They had thought of applying for a new au pair through the Homestay program, but because of their need for a consistent caregiver and that the children were already bonded to Price, it was in the children's best interest to have her as their au pair. *Id.* Mrs. Blumenfeld also stated that when the youngest child reached five years of age, he would be enrolled in all-day kindergarten, and they would no longer need a full-time person. *Id.*

Another letter, undated, stated that she and her husband may be called out of their home at any time because of his medical practice and her horse breeding business. *Id.* During a horse show weekend, she is away from home from Friday through Sunday from 7:00 a.m. to midnight, though she did not state the frequency of such an event. *Id.* The employment agreement, March 15, 1989, between the plaintiffs and Price contains the same job description as that presented to the DOL and listed in the ad. The agreement does not provide starting or ending dates of employment.

On August 1, 1989 the District Director of the United States Department of Justice, INS Division, denied the petition on the basis that plaintiffs failed to establish the position as temporary. Plaintiffs appealed this decision to the Commissioner of the INS, who, on December 29, 1989, dismissed their appeal and affirmed the decision of the District Director. On June 12, 1990, plaintiffs brought this action seeking reversal of the Commissioner's decision.

*Discussion*

Summary judgment is appropriate only if the record "[s]hows that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. "[I]n determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The moving party bears the initial burden of demonstrating that no factual issues exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting). Once that burden is met, the opposing party must set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ As there is no provision in the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1101, *et seq.*, for judicial review of a final agency decision by the Commissioner of the INS, this review is governed by the Administrative Procedure Act, 5 U.S.C. § 706. *See Vucinic v. INS*, 243 F.Supp. 113 (D.Or.1965). The court's discretion in reviewing agency action is exceedingly limited.

■ The reviewing court may only set aside a final decision when it is found to be

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The court must decide whether the agency decision was a reasonable one, and in determining reasonableness, must consider whether the decision was based on the relevant factors, lacked a rational basis, and whether the decision represents a clear error of judgment. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (citations omitted). The court may find that INS abused its discretion if it based its decision on a misunderstanding of the law, or there is no evidence to support its decision. *North American Indus., Inc. v. Feldman,* 722 F.2d 893, 898 (1st Cir.1983); *Mars Jewelers v. INS,* 702 F.Supp. 1570, 1571–2 (N.D.Ga. 1988); *see also* 5 U.S.C. § 706(2)(A), (D) & (E).

■■■ In reviewing the agency's decision, the court is not free to make findings of fact, *Navarro v. District Director,* 574 F.2d 379, 383 (7th Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 182, 58 L.Ed.2d 170 (1978), and must be careful not to substitute its judgment for that of the agency. *Chevron v. NRDC,* 467 U.S. 837, 844, 845, 104 S.Ct. 2778, 2782, 2783, 81 L.Ed.2d 694 (1983); *see also Secretary of Labor v. Farino,* 490 F.2d 885 (7th Cir.1973) (The court need not agree with the agency's decision and must defer to it when it is sufficiently justified in fact and law.); *Tongatapu Woodcraft Hawaii Ltd. v. Feldman,* 736 F.2d 1305 (9th Cir.1984). The court may engage in plenary review of questions of statutory interpretation, *North American Indus.,* 722 F.2d at 898; but must give deference to the INS' construction of a statute it administers. *De Los Santos v. INS,* 690 F.2d 56, 59, 60 (2d Cir.1982); *Volt Technical Serv. Corp. v. INS,* 648 F.Supp. 578, 580, 582 (S.D.N.Y.1986). The agency decision must be upheld on the reasons articulated by the agency, not on post hoc explanations of counsel. *United States v. Garner,* 767 F.2d 104, 117 (5th Cir.1985).

■■■ The Act grants authority to make nonimmigrant visa decisions to the Attorney General, acting through appropriate agencies of the government. 8 U.S.C. § 1184(c). DOL has a statutory duty to certify that qualified persons in the United States are not available and that the employment of an alien will not adversely affect wages or working conditions of workers in the U.S. similarly employed, or to give the petitioners notice that such certification cannot be made. 8 C.F.R. § 214.2(h)(4)(i)(A) and (B); 20 C.F.R. § 621.3(a). In reaching its decision, DOL may consider the employer's attempts to recruit workers, and the appropriateness of the wages and working conditions. 20 C.F.R. § 621.3(b).

The issue presented is whether the Commissioner's decision was arbitrary and capricious and, therefore, an abuse of discretion. The Commissioner, after reviewing plaintiffs' evidence,[1] dismissed plaintiffs' appeal because they had not provided convincing evidence that the DOL's employment policies had been observed. He noted that while the DOL's role is advisory, its determination is given weight with respect to the issues of employment conditions and the U.S. labor market. Thus, he stated that the regulations provide "that an unfavorable advisory temporary labor certification determination may be overcome only upon presentation of countervailing evidence which serves to demonstrate there are no qualified workers available in the U.S. and that the employment policies of DOL have been observed." The Commissioner found that Plaintiffs had not met either burden.

First, relying on *Artee,* 18 I & N Dec. 366 (1982), he found that plaintiffs had not clearly demonstrated that their need for the au pair would be temporary within the meaning of the Act, 8 U.S.C.

---

1. The evidence presented by plaintiffs and considered by the Commissioner included: Mrs. Blumenfeld's letters, a letter from the West Hartford Public Schools stating that full-day kindergarten is available, and medical records establishing that plaintiffs were unable to have more natural children. He also noted plaintiffs' argument that their need for the au pair will end when the youngest child is in full-day kindergarten.

§ 1101(a)(15)(H)(ii) [2] and would end when the youngest child entered school. DOL guidelines command the DOL to consider whether in its judgment the position offered to an alien is temporary or not because the availability test of U.S. workers within a single occupation may vary considerably depending on whether the job is permanent or temporary. 49 Fed.Reg. 25837 (June 25, 1984). Therefore, a threshold determination of whether the position offered is temporary or not is necessary to further the employment policies of the DOL and INS.

Second, because the plaintiffs' recruitment efforts did not represent the position as temporary, the Commissioner determined there was insufficient evidence to show that there were no U.S. workers available to fill a temporary child monitor position. He noted that the plaintiffs had not readvertised the position as a temporary one.[3] DOL policy requires that the same job terms offered to aliens be offered to U.S. workers.

The plaintiffs do not challenge the INS interpretation of the meaning of "temporary" in general, but rather the Commissioner's application of the test for determining whether a position is temporary articulated in *Artee*.[4] 18 I & N Dec. 366 (Comm.1982). In *Artee*,[5] INS established

**2.** 8 U.S.C. § 1101(a)(15)(H)(ii) defines the term "immigrant" to mean every alien except an alien "who is coming temporarily to the United States ... to perform other temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country." While the Act does not define the term "temporary," it does define "permanent" as a "relationship of continuing or lasting nature, as distinguished from temporary." 8 U.S.C. § 1101(a)(31). Regulations relating to temporary non-agricultural workers, promulgated under the Act, similarly fail to define "temporary." *See* 8 C.F.R. § 214, *et seq.* However, the same regulations do state that "[e]mployment is of a temporary nature where the employer's need to fill the position with a temporary worker will, except in extraordinary circumstances, last no longer than one year." 8 C.F.R. § 214.2(h)(3)(iv)(A); *See also* 20 C.F.R. § 655.100(c)(2)(iii) (defining "temporary" agricultural jobs as lasting less than one year, unless unforeseen circumstances give rise to an extension); 29 C.F.R. § 500.20 (in the Migrant and Seasonal Agricultural Worker Protection Act, employment is temporary if for a limited time only, or contemplated for a particular piece of work of a short duration; it is not if contemplated to continue indefinitely).

**3.** The plaintiffs correctly assert that there is no requirement that they readvertise the position after a DOL denial. However, plaintiffs confuse failure to follow procedure with failure to comply with policy. The Commissioner's mention of readvertisement was in reference to the fact that plaintiffs had an opportunity to readvertise the position as temporary after the DOL's denial, and therefore gather "countervailing evidence" that no qualified workers existed to fill a temporary au pair position. He did not state that it was a requirement, but merely suggested it might have helped their case.

**4.** Although plaintiffs appeal the Commissioner's decision, they also challenge the District Director's findings. It appears that the District Director properly applied the *Artee* standard by focusing on the evidence establishing plaintiffs' need. After reviewing the evidence presented by plaintiffs, the District Director denied the petition on the basis that plaintiffs had failed to show Price would be "coming temporarily to the United States to perform temporary services or labor." In reviewing the evidence presented, the District Director noted the statement of the plaintiffs that they only need a full-time au pair until the youngest child is in kindergarten, that they intend to employ Price for a one year period, but intend to readvertise the position in a year's time, and that they had some difficulty in hiring U.S. workers. The District Director did not blindly follow the DOL's denial, nor did he simply categorize the position as a permanent one based on preexisting classifications. He further acknowledged the current day-care shortage and he noted that the plaintiffs may face further difficulties in hiring in the future, and that this gave further support to his finding that the position offered would not be temporary.

**5.** The validity of the *Artee* test has been upheld. *See Sussex Engineering Ltd. v. Montgomery*, 825 F.2d 1084, 1089 (6th Cir.1987), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1473, 99 L.Ed.2d 702 (1988) ("[T]he *Artee* standard is reasonable and cannot be said to conflict with the expressed intent of Congress. This is exactly the type of situation where the court should defer to the statutory construction of the agency."); *North American Indus.*, 722 F.2d at 896–900 (reversing denial of a 6th preference visa petition because the INS acted arbitrarily and capriciously in not considering the petitioner's need for the alien's services, as required by *Artee* ); *Seven Star Inc. v. United States*, 873 F.2d 225 (9th Cir.1989) (holding correct application of *Artee* ); *Volt Technical Serv. Corp.*, 648 F.Supp. at 578 (policy of INS to prevent easy entrance of aliens intending indefinite stay through H–2 visa process promoted by *Artee* test.)

the current test used to determine whether a position offered is temporary and expressly overruled the previous standard, articulated in *Matter of Contopolous,* 10 I & N Dec. 654 (Acting R.C.1964), that the nature of the duties to be performed were controlling. *Id.* at 3. The Commissioner held that in determining whether an alien is coming "temporarily" to the United States to perform "temporary" services or labor as required by § 1101(a)(15)(H)(ii) of the Act, the nature of the need for the duties to be performed must be examined. *Id.* Petitioners for such visas must meet two burdens. First, they must credibly establish that they have not employed an au pair in the past, and second, that they will not need her services in the near, definable future. *Id.*

█ In this case, the Commissioner's decision that the plaintiffs had not sufficiently established that their need for the au pair is temporary was consistent with the test set forth in *Artee.* The Commissioner's finding was not unreasonable given the fact that the tangible evidence of plaintiffs' child care needs conflicted with their verbal statements that they intended the position and their need to be temporary. Their description of the position in the DOL application, and in the newspaper ad, did not describe the position as temporary. Nor are the duties listed therein consistent with the care of only one infant through toddlerhood until school age. Rather, the duties included caring for all four of the children and their various special needs, as well as housekeeping duties, during the school day, some evenings, Saturday mornings, and entire weekends when the plaintiffs were called out to work, needs likely to continue during the children's tender and teen years. The statements by Mrs. Blumenfeld, in her letters, that plaintiffs sought a consistent caregiver, particularly Price, because she had already bonded to the children and that they decided not to seek another au pair through the Homestay program, belie plaintiffs' claim that they intended to readvertise the position in a year's time, and that the position and their needs are temporary. The contract with Price was for three years. Therefore, it was not unreasonable to conclude that their child care needs, for the duties they listed, would not end in the near, definable future. The Commissioner's judgment that plaintiffs' evidence was insufficient to establish that their need was temporary is entitled to deference from this court.

Plaintiffs' reliance on *Wilson v. Smith,* 587 F.Supp. 470 (D.D.C.1984), is misplaced. *Wilson* is distinguishable. Petitioners in *Wilson* were a married professional couple with one infant daughter, who sought child care until their daughter was enrolled in kindergarten. Their need was limited to the care of one child and had a credible, definite ending date. Plaintiffs, here, seek a child monitor for all of their children and have employed Price as an au pair from January 1988 to January 1989. Furthermore, the *Wilson* Court reversed the INS denial of the H–2 petition because the Commissioner, in determining temporariness, relied on factors irrelevant to the issue of duration of the petitioners' need such as petitioners' absence from the home only during normal business hours, their failure to vigorously search for qualified U.S. workers, their possible inability to pay a sufficient wage, and the fact that the beneficiary was already employed by petitioner's sister. *Id.* at 472–473. In the present case, the Commissioner did not rely solely on irrelevant factors, but considered all the evidence pertaining to the duration of the plaintiffs' need and determined that their need was not temporary. The Commissioner's decision is supported by the evidence and by case law and is entitled to deference.

*Conclusion*

Accordingly, plaintiffs' motion for summary judgment is denied and defendant's motion for summary judgment is granted.

SO ORDERED.